UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRENDA WRIGHT,

                      Plaintiff,

v.                                                                         1:18-CV-1208
                                                                              (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      ANTHONY ROONEY, ESQ.
  Counsel for Plaintiff                                KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                 MICHELLE CHRIST, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 12.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**I.**     **RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1973. (T. 209.) She completed high school. (T. 237.) Generally, Plaintiff's alleged disability consists of depression, anxiety, post-traumatic stress disorder ("PTSD"), hypothyroidism, irritable bowel syndrome, and back problems. (T. 236.) Her alleged disability onset date is December 1, 2004. (T. 232.) Her date last insured is December 31, 2008. (T. 232.) Plaintiff's past relevant work consists of general laborer. (T. 237.)

### B. Procedural History

On May 6, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 99.) Plaintiff's application for SSI benefits was granted. (T. 144.) Plaintiff's application for SSD benefits was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 18, 2017, Plaintiff appeared before the ALJ, Maria Herrero-Jaarsma. (T. 39-98.) On March 30, 2018, ALJ Herrero-Jaarsma issued a written decision finding Plaintiff not disabled under the Social Security Act from December 1, 2004 through December 31, 2008. (T. 16-30.) On September 14, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following four findings of fact and conclusions of law. (T. 22-26.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2008 and Plaintiff had not engaged in substantial

gainful activity since December 1, 2004. (T. 22.) Second, the ALJ found Plaintiff had the medically determinable impairments of hypothyroid issues, major depressive disorder; anxiety disorder with panic attacks; and PTSD. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment or combination of impairments that has significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments. (*Id*.) Fourth, the ALJ determined Plaintiff has not been under a disability from December 1, 2004 through December 31, 2008. (T. 25.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in finding that there were no severe impairments at step two. (Dkt. No. 9 at 13-16.) Second, and lastly, Plaintiff argues the AC erred in not evaluating the opinion of Plaintiff's treating social worker, Taña Rosendahl, LMHC, LCAT. (*Id*. at 16-19.) Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 11.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly determined Plaintiff's impairments were not severe before December 31, 2008, Plaintiff's date last insured. (Dkt. No. 10 at 13-22.) Second, Defendant argues the evidence presented to the AC did not alter the weight of the evidence. (*Id*. at 22-24.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Step Two Determination

Plaintiff argues evidence in the record indicated her mental health impairments were debilitating during the relevant time period; therefore, the ALJ erred in finding no severe impairments at step two. (Dkt. No. 9 at 13-19.)

5

At step two of the sequential evaluation process, the ALJ must determine whether a plaintiff has a severe impairment that significantly limits her physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c)[1].  Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe."  *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).  Plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 416.912(a).

Here, the ALJ found Plaintiff suffered from the medically determinable impairments of hypothyroid issues, major depressive disorder; anxiety disorder with panic attacks; and PTSD.  (T. 22.)  However, the ALJ determined Plaintiff's impairments were not severe impairments because there was no evidence in the record to support Plaintiff's allegations that her impairments significantly limited her ability to perform the basic work activities from December 1, 2004 through December 31, 2008.  (T. 22-25.)

Plaintiff appears to argue the Social Security Administration's subsequent finding, that Plaintiff was disabled as of May 2015, is evidence that her mental impairments

---

[1] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

were severe prior to 2008. (Dkt. No. 9 at 14.)[2] Plaintiff's argument is without merit. A subsequent finding of disability "is not itself evidence of disability but, rather, a conclusion based on evidence." *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015).

Plaintiff also appears to argue that there was a question of Plaintiff's onset date and therefore the ALJ was required to seek the opinion of a medical expert. (Dkt. No. 9 at 14.) Plaintiff's argument is misplaced. First, there was no question of Plaintiff's alleged onset date of December 1, 2004. Second, to be eligible for benefits under SSD, Plaintiff must establish she became disabled on or before her date last insured, here December 31, 2008. For Plaintiff to be eligible for benefits under SSD, she "must have been insured within the meaning of 42 U.S.C. § 423(c) at the onset date of his or her disability ...." *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).

As stated by the ALJ in her decision, Plaintiff was granted SSI benefits at the lower level, therefore, "the only issue [was] whether [Plaintiff] had sufficient evidence in the file and at the hearing to show medically determinable impairments have been established prior to the date last insured of December 31, 2008." (T. 23.) Therefore, Plaintiff was not entitled to benefits under SSD, unless she because disabled prior to her date last insured. *See Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989).

Here, the ALJ properly determined Plaintiff did not have severe impairments prior to her date last insured and substantial evidence in the record supported the ALJ's determination. In making her step two finding, the ALJ determined the objective medical evidence failed to provide support that Plaintiff's medically determinable

---

[2] Plaintiff states, "The Social Security administration indicated that the Plaintiff was found disabled as of May 2015, the date she applied, for the purposes of SSI. As such, the evidence was more than *de minimis* that the Plaintiff had severe mental impairments." (Dkt. No. 9 at 14) (citations omitted).

7

impairments produced limitations on her ability to perform basic work activities on or before December 31, 2008. (T. 24.) Indeed, Plaintiff failed to provide any medical evidence establishing her impairments were disabling prior to December 31, 2008.

Plaintiff asserts Ms. Rosendahl's December 2017 letter indicated Plaintiff's symptoms existed prior to 2008 and therefore her impairments were severe. (Dkt. No. 9 at 15.) However, the issue is not whether symptoms existed prior to 2008, but whether Plaintiff's mental health impairments rendered her unable to work at that time. *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 763 (S.D.N.Y. 2017), *aff'd sub nom. Mauro v. Comm'r of Soc. Sec. Admin.*, 746 F. App'x 83 (2d Cir. 2019). The ALJ discussed Ms. Rosendahl's letter which indicated Plaintiff's condition was "most likely due to distress symptoms occurring prior to 2008." (T. 24, 669.) The ALJ properly afforded Ms. Rosendahl's statement "little weight" reasoning she did not provide supporting evidence, she did not treat Plaintiff during the relevant time period, and she was not an acceptable medical source. (T. 24.)[3]

As noted by the ALJ, the evidence in the record, including Ms. Rosendahl's 2017 letter, did not support a finding that Plaintiff's mental health impairments were severe prior to December 2008. The ALJ noted records from a treating gynecological source covering the relevant time period; however, the notes were for routine visits with no mention of disabling mental or physical impairments. (T. 24, 298-303.) The ALJ requested medical records from Yan Liu, M.D., but the request was returned stating there were no treatment records for Plaintiff. (T. 24, 670.) Therefore, the ALJ properly

---

[3] Licensed mental health clinicians, like Ms. Rosendahl, are not acceptable medical sources and therefore their opinions may be considered with respect to the severity of a plaintiff's impairments and ability to work, but their opinions need not be affording any special weight. 20 C.F.R. § 404.1513(d)(1).

relied on the evidence in the record to support her determination that Plaintiff's medically determinable impairments were not severe impairments prior to her date last insured.

Plaintiff asserts the ALJ improperly faulted her for not seeking treatment before 2014 for her mental impairments. (Dkt. No. 9 at 15-16.) As an initial matter, nowhere in her decision did the ALJ fault Plaintiff for failure to seek treatment. (T. 24-25.) As stated by Defendant, the ALJ merely noted, prior to Plaintiff's date last insured, the record did not contain any evidence for the period from December 1, 2004 through December 31, 2008. (T. 24.) Therefore, the ALJ did not fault Plaintiff for seeking medical treatment during the relevant time period. The ALJ merely noted that there was no treatment, besides routine gynecological care, in the record covering the relevant time period.

Overall, the ALJ properly determined Plaintiff's medically determinable impairments were not severe prior to December 2008. Treatment records during the relevant time period did not contain treatment for mental health impairments nor did the record during the relevant time period contain complaints of mental health symptoms. Further, although treating sources opined Plaintiff's mental health symptoms "most likely" occurred prior to 2008, this alone was not enough to prove functional limitations prior to 2008.

**B. Evidence Submitted to AC**

Plaintiff argues the AC erred in not evaluating Ms. Rosendahl's August 2018 letter. (Dkt. No. 9 at 16-19.) Plaintiff asserts the AC erred in concluding the letter post-dated the ALJ's decision and therefore "does not affect the decision about whether you

9

were disabled beginning on or before April 4, 2018." (*Id*. at 19.)  Plaintiff argues the August 2018 letter related to Plaintiff's mental impairments and notes her symptoms occurred prior to 2008 and an acceptable medical source agreed with her opinion.  (*Id*. at 18.)  Here, the August 2018 letter would not have altered the ALJ's decision because the August 2018 letter was nearly identical to the December 2017 letter which was before the ALJ.

As a general matter, "[t]he Appeals Council is obligated to consider 'new and material' evidence that 'relates to the period on or before the date of the administrative law judge hearing decision.' " *Patterson v. Colvin*, 24 F. Supp. 3d 356, 372 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 404.970(b)).  New evidence is "material" if it is: "(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative." *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)).

However, "[t]he Second Circuit [has] clearly stated that when new evidence is submitted to the AC and the AC denies review, the reviewing court's role is to review the entire administrative record, including the new evidence, and determine whether substantial evidence supported the Commissioner's final decision." *Samantha S. v. Comm'r of Soc. Sec.,* 385 F. Supp. 3d 174, 189 (N.D.N.Y. 2019) (citing *Canady v. Comm'r of Soc. Sec.*, 2017 WL 5496071, at *10 (N.D.N.Y. Oct. 4, 2017) *report and recommendation adopted by* 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017)).

Under those circumstances, the question becomes "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the AC to take the case." *Canady*, 2017 WL 5496071, at *11; *see also Patterson*, 24 F. Supp. 3d

at 373 ("[T]his requirement has been interpreted to mean that there must be a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.") (internal citations omitted); *see Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) ("It is clear from the record that Bushey's new evidence [submitted to the AC] does not raise a reasonable possibility that the Commissioner would have decided the case differently."); *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) ("While the evidence relates to the period before the ALJ's decision, it does not add so much as to make the ALJ's decision contrary to the weight of the evidence.").

The August 2018 letter is essentially a duplicate of the December 2017 letter, which was before the ALJ and which the ALJ considered. (T. 24, 668-669.) To be sure, the 2018 letter contained an additional paragraph detailing Ms. Rosendahl's professional experience, noted Plaintiff's medication dosage of Klonopin increased from once daily to twice daily, and added a secondary diagnosis of major depression and generalized anxiety disorder with panic attacks. (Compare T. 7-9 to 668-669.) The August 2018 letter also added generic information regarding survivors of abuse. (T. 8-9.) However, other than those changes, the letters are line for line identical.

Plaintiff argues the 2018 letter undermines the ALJ's "criticism" of Ms. Rosendahl's status as a non-acceptable medical source because the 2018 letter contains an endorsement by an acceptable medical source. (Dkt. No. 9 at 18-19.) Plaintiff's assertion is a mischaracterization of the 2018 letter.

In her 2017 letter, as in her 2018 letter, Ms. Rosendahl indicated Plaintiff received medication from Dr. Ross. (T. 7, 668.) Ms. Rosendahl wrote in 2017, "[i]t is

11

my professional opinion at this time that [Plaintiff] is experiencing mental health symptoms that are significantly interfering with her ability to function." (T. 668.) In her 2018 letter, Ms. Rosendahl wrote "[i]t is our professional opinion at this time that [Plaintiff] is experiencing mental health symptoms that are significantly interfering with her ability to function." (T. 7.) By changing "my professional opinion" to "our professional opinion" Ms. Rosendahl did not establish an endorsement. Indeed, Dr. Ross did not sign either letter. (T. 9, 669.) Further, both statements refer to Plaintiff's mental functioning "at this time," *i.e.* 2017 and 2018, not 2008. (T. 7, 668.) Both letters contain the statement that the severity of Plaintiff's symptoms were "most likely [] due to the distress symptoms occurring prior to 2008." (T. 8, 669.) As outlined above, substantial evidence supported the ALJ's determination that although Plaintiff experienced mental health symptoms prior to her date last insured, the record failed to indicate her mental health impairments rose to the level of severe prior to 2008.

For the reasons outlined above, Ms. Rosendahl's August 2018 letter would not have raised a "reasonable possibility that the [ALJ] would have decided the case differently." *Bushey,* 552 F. App'x at 98; *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("Because the report that the ALJ overlooked was not significantly more favorable to Petitioner, we find no reasonable likelihood that her consideration of the same doctor's 2002 report would have changed the ALJ's determination that Petitioner was not disabled during the closed period.").

**ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 30, 2019

/s/ Bill Carter
William B. Mitchell Carter
U.S. Magistrate Judge